O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JEAN J. ELNAJJAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-680 |
| | § | |
| NORTHWEST AIRLINES, INC. and | § | |
| KLM ROYAL DUTCH AIRLINES, | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| S. A. JAOUDE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-681 |
| | § | |
| KLM ROYAL DUTCH AIRLINES, | § | |
| and NORTHWEST AIRLINES, INC., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending in both of the above captioned cases are Defendants Northwest Airlines, Inc.'s and KLM Royal Dutch Airlines's **First Amended Rule 12(b)(6)** Motion to Dismiss (Document No. 29 in C.A. No. 04-680 and Document No. 30 in C.A. No. 04-681). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes that each motion should be granted.

I.  Background

These two cases, which both are alleged to arise out of exactly the same circumstances, were filed simultaneously in state court, and were removed simultaneously to this Court.  Essentially, Plaintiffs Elnajjar and Jaoude claim they were ticketed to fly on Defendants' scheduled airlines from Houston to Amsterdam less than four months after 9/11, when they were treated in a hostile manner by an airline agent, forcibly removed from the airplane, and required to take other flights through intermediate airports that delayed them and forced them to miss their respective families' Christmas celebrations.

Confronted with motions to dismiss Plaintiffs' claims for failure to state a claim upon which relief could be granted, both Plaintiffs successfully moved for leave to file an amended complaint.  The amended complaints of both Plaintiffs are still identical to each other, even to the point of typographical errors, and Defendants have filed their First Amended Motions to Dismiss.

The identical factual circumstances alleged by each Plaintiff as the basis for his cause of action are set out in paragraphs 4, 5, and 6 of each First Amended Complaint, as follows:

> 4.   On or about December 23, 2001, the Plaintiff was scheduled to depart Houston for Amsterdam, to spend Christmas with his family, with an airline ticket purchased for travel on KLM and Northwest Airlines.

      At check-in, Plaintiff was harassed and intentionally asked very personal questions, by Defendant's employee, named Holly, in a loud tone causing other passengers and patrons of the airport to draw their attention to Plaintiff. Plaintiff was going to visit family for the Christmas Holiday, specifically to spend Christmas Eve and Christmas with his family and attend church services.

5. The Defendant's employee screamed to Plaintiff that he would be seated next to a U.S. Marshall [sic] once seated on the flight. Many passengers and patrons heard the screams from the Defendant's employee and looked on in horror. After entering the airplane, Plaintiff was seated in a seat other than the one he had reserved and not with his friend. Defendant's employee entered the airplane, circled Plaintiff, and began to taunt Plaintiff by yelling and screaming at him and then laughing. Plaintiff was informed in a loud tone that he was seated so everyone could watch him. Defendant's employee proceeded to instruct two other passengers to keep an eye on Plaintiff. While seated the Defendant's employee continually circled the Plaintiff wishing him a merry Christmas in a sarcastic and peculiar tone, over a dozen times.

6. As the plane was preparing to depart two people, identifying themselves as United States Secret Service Agents came on board the airplane and removed Plaintiff and his friend from the airplane. Another employee informed Plaintiff and his friend that they would not be allowed to depart Houston. Plaintiff was escorted off the airplane and escorted by the United States Secret Service Agents and a United States Solider [sic] in fully combat gear with an automatic weapon off the airplane and throughout the airport. Plaintiff was escorted throughout the airport by the two agents, Defendants agent and the combat soldier and ultimately missed his flight. Plaintiff was sent to three different airports with advance reports being sent to each airport in advance warning of his arrival. Plaintiff was forced to miss his family's Christmas celebration.

Based on these allegations, each Plaintiff sues for damages on account of Defendants' alleged negligence, conspiracy, breach of contract, false imprisonment, intentional infliction of emotional distress, invasion of privacy, and defamation.  In addition, each asserts that Defendants violated a host of federal statutory provisions: 49 U.S.C. §§ 41702, 41310, and 40127; 42 U.S.C. § 2000d and e, et seq., Air Carrier Access Act 49 U.S.C. § 1374 and 42 U.S.C. § 1981.  Defendants move to dismiss all these claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.  Standard of Review

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.  *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* Lowrey v. Texas A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).  Dismissal of a claim is

4

improper "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief."  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 524 (5th Cir. 1994).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir. 1993).

"The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests."  Mann v. Adams Realty Co., 556 F.2d 288, 293 (5th Cir. 1977).  Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the allegations" in the complaint.  Hishon v. King & Spalding, 104 S. Ct. 2229, 2232 (1984).  While the district court generally may not go outside the complaint in addressing a Rule 12(b)(6) motion, it may consider documents attached to the complaint, as well as documents that are referenced in and central to the complaint.  *See* Kennedy v. Chase Manhattan Bank USA, NA, 369 F.3d 833, 839 (5th Cir. 2004); Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003).

III. Discussion

Defendants move to dismiss Plaintiffs' claims, arguing that: (1) all of the claims are preempted by the Warsaw Convention;[1] (2) or if not preempted by the Convention, the claims are preempted by the Federal Aviation Act ("FAA"), as amended by the Airline Deregulation Act ("ADA"); and (3) any of Plaintiffs' allegations that are not preempted nonetheless fail to state claims upon which relief can be granted.

A. Preemption by the Warsaw Convention

The Warsaw Convention "governs air carrier liability for 'all international transportation,'" El Al Israel Airlines, Inc. v. Tseng, 119 S. Ct. 662, 667 (1999), and preempts all causes of action that fall within the scope of its liability articles, that is, Articles 17, 18, and 19. See Fishman v. Delta Air Lines, Inc., 132 F.3d 138, 141 (2d Cir. 1998); Donkor v. British Airways Corp., 62 F. Supp. 2d 963, 968 (E.D.N.Y. 1999) (citing Tseng, 119 S. Ct. at 668-69).[2] Article 17 of the Convention is the exclusive

---

[1] Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, 3014, T.S. No. 876(1934), reprinted in note following 49 U.S.C. § 40105 [hereinafter cited as 49 U.S.C. § 40105].

[2] Article 17 establishes the conditions of liability for personal injury to passengers, Article 18 establishes the conditions of liability for damage to baggage or goods, and Article 19 establishes the conditions of liability for damage caused by delay. See Tseng, 119 S. Ct. at 668-69.

mechanism for recovering for personal injuries suffered on board an aircraft or in the course of embarking or disembarking. Tseng, 119 S. Ct. at 668. Consequently, "recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' if not allowed under the Convention, is not available at all." Id. (citing 49 Stat. 3018); *cf.* Bernardi v. Apple Vacations, 236 F. Supp. 2d 465, 469 (E.D. Pa. 2002)("[O]nce a court determines that the action is one for personal injury within the scope of the Warsaw Convention, it must dismiss all state law claims as preempted, and allow a plaintiff to proceed in the federal forum, and only on claims cognizable under the Convention.").[3]

For an air carrier to be liable under Article 17, the plaintiff must establish: (1) that an "accident" occurred, (2) on board the aircraft or while the plaintiff was in the course of the

---

[3] Relying on Article 25 of the Convention, Plaintiffs argue that because their claims are based on Defendants' alleged "willful misconduct," they do not fall within the scope of Article 17. Plaintiffs misread Article 25. Article 25 provides that "[t]he carrier shall not be entitled to avail himself of the provisions of this convention *which exclude or limit his liability*, if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct." 49 U.S.C. § 40105 (emphasis added). Thus, rather than removing allegations of willful misconduct entirely from the Convention's reach, Article 25 simply provides that a carrier who engages in willful misconduct cannot avail itself of the Convention's cap on damages. *See* Tseng v. El Al Israel Airlines, Ltd., 122 F.3d 99, 104 (2nd Cir. 1997), *rev'd on other grounds*, 119 S. Ct. 662 (1999); Bernardi, 236 F. Supp. 2d at 469-70.

operations of "embarking or disembarking," (3) causing injury or death. *See* Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1259 (11th Cir. 2002); Blansett v. Cont'l Airlines, Inc., 246 F. Supp. 2d 596, 599 (S.D. Tex. 2002).[4]  Plaintiffs contend that their claims do not fall within the scope of Article 17 because "several factual allegations" occurred outside the course of embarking and disembarking.

As Plaintiffs implicitly concede, most of their claims are based on incidents that occurred while they were on the plane and as they were being escorted off the plane--that is, while Plaintiffs were "on board the aircraft [and] in the course of . . . disembarking."  *See* Tseng, 119 S. Ct. at 668 (quoting 49 U.S.C. § 40105).  Plaintiffs' negligence and conspiracy claims--which are predicated entirely on these incidents--are therefore wholly preempted by Article 17.  Plaintiffs' intentional infliction of

---

[4] Plaintiffs suggest that Article 17 does not preempt their claims because it covers only "accidents," and not intentional misconduct.  The Supreme Court, however, has defined the term "accident" broadly to include any "unexpected or unusual event or happening that is external to the passenger," Air France v. Saks, 105 S. Ct. 1338, 1345 (1985), and courts agree that this definition encompasses intentional misconduct. *See*, *e.g.*, King v. Am. Airlines, 284 F.3d 352, 360 (2d Cir. 2002) ("Intentional torts may, in some instances, constitute accidents actionable under the Convention."); Carey v. United Airlines, 255 F.3d 1044, 1049 (9th Cir. 2001) ("[A] carrier's intentional misconduct can fall under the definition of 'accident,' provided that the conduct otherwise meets the standard laid out in Saks."); Bernardi, 236 F. Supp. 2d at 470 ("At no time has the Supreme Court limited the broad definition of the term 'accident' only to events that involve reckless or negligent conduct, or otherwise carved out wilful misconduct from the scope of the Convention.").

emotional distress, invasion of privacy, and defamation claims, as well as their federal statutory claims, are also preempted to the extent they are based on these incidents.

Although Plaintiffs' claims arising from these incidents fall within the scope of Article 17, the claims are not cognizable under Article 17 because Plaintiffs allege only that they suffered mental and emotional harm and not physical injury. *See* Tseng, 119 S. Ct. at 668 ("[M]ental or psychic injuries unaccompanied by physical injuries are not compensable under Article 17 of the Convention.") (citing Eastern Airlines, Inc. v. Floyd, 111 S Ct. 1489, 1502 (1991)).

To the extent Plaintiffs base their claims of intentional infliction of emotional distress, invasion of privacy, and defamation on Defendants' conduct at "at check-in," the claims may not be preempted by the Convention.  To determine whether a passenger was in the course of embarking or disembarking, courts generally employ a "totality of the circumstances approach" whereby several factors are particularly relevant, including: (1) the passenger's location at the time of the accident; (2) the passenger's activity at the time of the accident; (3) the degree of control the airline was exercising over the passenger when the injury occurred; and (4) the imminence of the passenger's actual boarding of the flight in question. *See, e.g.*, Marotte, 296 F.3d at 1260 (citing cases).  In general, the term "embarking" suggests

a "close temporal and spatial relationship with the flight itself," such that "a close connection between the accident and the physical act of boarding the aircraft is required."  Id.

Plaintiffs allege that at check-in, Holly "harassed" them, "intentionally asked very personal questions" of them, and "screamed to [them] that [they] would be seated next to a U.S. Marshal[] once seated on the flight."  The implication of Plaintiffs' First Amended Complaints is that this encounter occurred at the check-in counter located at the boarding gate, an area of the terminal restricted to passengers.  It is unclear, however, whether the encounter was proximate in time to Plaintiffs' actual boarding and to what extent Plaintiffs were then under the control of Defendants' agents.  It cannot be held, therefore, that Plaintiffs' encounter with Holly at the boarding check-in gate occurred in the course of embarking, and Plaintiffs' claims arising out of that encounter are therefore not clearly preempted by Article 17.

Similarly, Article 17 does not preempt Plaintiffs' false imprisonment claims, which are based on incidents that occurred after Plaintiffs had fully disembarked.  Plaintiffs allegedly were escorted "throughout the airport" by two Secret Service agents, Defendants' agent, and a combat soldier; were "not allowed to leave the custody of the Defendants' agents at any time"; and were "prevented from moving about the airport freely."  This "false

10

imprisonment" occurred some distance from the boarding area and entailed the direction of law enforcement officials, not just Defendants' agent. Accordingly, Plaintiffs' false imprisonment claims are not preempted by Article 17. *See* Alleyn v. Port Auth. of N.Y. & N.J., 58 F. Supp. 2d 15, 20-21 (E.D.N.Y. 1999) (collecting cases where plaintiffs who had deplaned, were in control of their own movements through public areas of the terminal, were unaccompanied by airline personnel, and were injured while on their way to connecting flights were not in the course of disembarking); Knoll v. Trans World Airlines, Inc., 610 F. Supp. 844, 847 (D. Colo. 1985) (holding that passenger injured on her way to immigration had ceased disembarking because "Plaintiffs' remaining activities (e.g. immigration, customs) were not conditions imposed by the airline for her disembarking."); Curran v. Aer Lingus, No. 81 Civ. 4590, 1982 U.S. Dist. LEXIS 15937, at *6-7 (S.D.N.Y. Sept. 28, 1982) ("[P]laintiff's movement was undeniably restricted at the time he was injured. The restrictions placed on him, however, were imposed by customs, not [by the defendant airline]."); *see also* Turturro, 128 F. Supp. 2d at 182 (holding that where passenger had been removed from the plane and "delivered into the hands of the police and a medical team" when airline allegedly conspired with police improperly to confine

11

passenger in mental hospital, the "crucial acts took place *after* 'disembarking'").[5]

B.  <u>Preemption by the FAA/ADA</u>

To the extent Plaintiffs' state law claims are not barred by the Convention, they are preempted by the FAA/ADA because they relate to airline services. In pertinent part, the ADA provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court has construed this provision broadly to preempt all state law claims that have "a connection with or reference to" an airlines's rates, routes, or services. *See* <u>Morales v. Trans World Airlines, Inc.</u>, 112 S. Ct. 2031, 2037 (1992). Whether the ADA preempts Plaintiffs' intentional

---

[5] Although Article 17 of the Convention does not necessarily preempt Plaintiffs' breach of contract claims, those claims fall within the preemptive scope of Article 19, which holds the carrier liable for all damage occasioned by delay in the international air transportation of passengers. *See* <u>Daniel v. Virgin Atl. Airways, Ltd.</u>, 59 F. Supp. 2d 986, 991 (N.D. Cal. 1998). Because Plaintiffs do not allege that they suffered any economic loss or physical injury as a result of the alleged breach, however, they cannot meet the conditions for recovery under Article 19. <u>Id.</u> at 992-94; *accord* <u>Ikekpeazu v. Air France</u>, No. 3:04 CV 00711(RNC), 2004 WL 2810063, at *2 (D. Conn. Dec. 6, 2004); <u>Lee v. Am. Airlines, Inc.</u>, No. Civ. A 301CV1179P, 2002 WL 1461920, at *4-5 (N.D. Tex. Jul. 2, 2002); <u>Fields v. BWIA Int'l Airways Ltd.</u>, No. 99-CV-2493(JG), 2000 WL 1091129, at *3 (E.D.N.Y. Jul. 7, 2000); <u>Barrett v. United Airlines, Inc.</u>, No. 92 C 5578, 1994 WL 419637, at *3 (N.D. Ill. Aug. 5, 1994). Plaintiffs' breach of contract claims must therefore be dismissed.

infliction of emotional distress, invasion of privacy, defamation, and false imprisonment claims therefore depends upon whether the claims refer to or have a connection with Defendants' services.

The ADA does not define the term "service," but the Fifth Circuit has held that it includes "'items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.'" Casas v. Am. Airlines, Inc., 304 F.3d 517, 525 (5th Cir. 2002) (quoting Hodges v. Delta Airlines, Inc., 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). "Undoubtedly, boarding procedures are a service rendered by an airline," and courts agree that an intentional tort claim premised upon an airline's boarding practices, such as an airline's decision to prevent a passenger from boarding a flight, relates to an airline service and is therefore preempted by the ADA. Smith v. Comair, Inc., 134 F.3d 254, 259 (4th Cir. 1998) (citations omitted). The ADA does not, however, preempt intentional tort claims premised upon an airline's unreasonable conduct too tenuously related or unnecessary to the provision of an airline service. *See* id. (citing Rombom v. United Air Lines, Inc., 867 F. Supp. 214, 221-22 (S.D.N.Y. 1994) (explaining that preemption occurs where (1) the activity at issue in the claim is an airline service, (2) the claim directly affects that service, and (3) the service was provided in manner that falls within a spectrum of reasonable conduct)).

Plaintiffs' intentional infliction of emotional distress, invasion of privacy, and defamation claims are based on Plaintiffs' allegations that Defendants' check-in agent "harassed and intentionally asked [Plaintiff] very personal questions" and "screamed to [Plaintiffs] that [they] would be seated next to a U.S. Marshall [sic] once seated on the flight." These state law claims are all preempted. Airline agents often ask questions of passengers who present themselves for check-in and make ticketing and seating decisions as part of the boarding process, and these activities are "services" within the meaning of the ADA. *See* Peterson v. Cont'l Airlines, Inc., 970 F. Supp. 246, 250 (S.D.N.Y. 1997) ("A flight crew's conduct during the boarding stage of a flight, specifically, flight attendants' efforts to locate appropriate seat assignments and resolve seat conflicts, constitutes an airline service"); *cf.* Rombom, 867 F. Supp. at 223 ("Even under the narrowest definition of services, a flight attendant who asks for quiet so that others may hear safety instructions is clearly performing a service."). Even accepting as true Plaintiffs' allegations that the check-in agent performed these services in a "loud tone" and harassing manner, the agent's conduct cannot be classified as the type of outrageous or unreasonable conduct so attenuated from airline services that it falls outside the preemptive scope of the ADA. *See* Ruta v. Delta Airlines, Inc., 322 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (holding that ADA preempted claims based on flight

14

attendant's rude comments to plaintiff at the boarding gate because unprofessional conduct "cannot be categorized as outrageous or unreasonable"); Rombom, 867 F. Supp. at 223 (holding that ADA preempted claims arising out of allegedly "rude" and unprofessional manner in which flight attendant instructed plaintiff to be quiet); Cannava v. USAir, Inc., Civ. A No. 91-30003-F, 1993 WL 565341, at *4-6 (D. Mass. Jan. 7, 1993) (holding that ADA preempted claims based on ticketing agent's conduct in grabbing and tearing up Plaintiffs' bereavement fare ticket, treating plaintiff rudely, and threatening to call airport security).[6]

"Cases in which false arrest and false imprisonment claims have been found to be preempted generally involve situations where an airline failed or refused to provide a service to a passenger,

---

[6] Even if the ADA did not preempt Plaintiffs' intentional infliction of emotional distress, invasion of privacy, and defamation claims, they would nevertheless fail as a matter of law. Plaintiffs' only allegation on their intentional infliction of emotional distress and invasion of privacy claims that arguably falls outside the scope of the Warsaw Convention is that at check-in, Defendants' agent "screamed" that Plaintiffs would be seated next to a U.S. Marshal on Plaintiffs' flight. This is not a "private matter," the publication of which "would be highly offensive to a reasonable person of ordinary sensibilities," see Green v. CBS, Inc., 286 F.3d 281, 285 (5th Cir. 2002) (setting out elements of relevant invasion of privacy tort), nor is it conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 611-12 (Tex. 1999) (outlining intentional infliction of emotional distress tort). Plaintiffs' defamation claims are barred by the one-year statute of limitations. See TEX. CIV. PRAC. & REM CODE ANN. § 16.002 (Vernon 2002); Cram Roofing Co. v. Parker, 131 S.W.3d 84, 88 (Tex. App.-- San Antonio 2003, no pet.).

circumstances which 'clearly relate to airline services.'" Lewis v. Cont'l Airlines, 40 F. Supp. 2d 406, 413 (S.D. Tex. 1999) (quoting Chrissafis v. Cont'l Airlines, Inc., 940 F. Supp. 1292, 1298-99 (N.D. Ill. 1996) (collecting cases)). "In contrast, 'where the gist of the false arrest and false imprisonment claim is that the airline caused the passenger to be arrested by authorities without a proper factual basis, courts have held that the claims are not related to services and, therefore, are not preempted.'" Id. Thus, to the extent Plaintiffs' false imprisonment claims are based on allegations that Defendants refused to permit them to re-board their intended flight and subsequently rerouted them, the claims are preempted. See Smith, 134 F.3d at 259. The claims are not preempted, however, to the extent they are premised on some other conduct distinct from Defendants' decision to remove them from the flight.

Even so, Plaintiffs have failed to plead facts sufficient to state claims for false imprisonment. Under Texas law, "[t]he essential elements of false imprisonment are: (1) willful detention; (2) without consent; and (3) without authority of law." Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). Although Plaintiffs allege that after they were escorted off the airplane, they were "not allowed to leave the custody of the Defendants [sic] agents," this allegation is insufficient to support the "willful detention" element of a false imprisonment

claim.  Plaintiffs do not allege where, how, or for how long Defendants' agents actually detained them and/or restricted their movement, nor have they pleaded any facts from which it could be inferred that Defendants used "violence, [] threats, or [] any other means that restrains a person from moving from one place to another" to detain Plaintiffs.  <u>Randall's Food Mkts., Inc. v. Johnson</u>, 891 S.W.2d 640, 644-45 (Tex. 1995).  Moreover, Plaintiffs have not alleged facts from which it could be inferred that the alleged detention was performed by Defendants "without authority of law."  In sum, Plaintiffs' allegation that they were "not allowed to leave the custody of the Defendants agents" is insufficient to state a claim for false imprisonment.  Because Plaintiffs have already been granted an opportunity to replead their false imprisonment claims, and because their pleadings are still deficient, the false imprisonment claims will be dismissed.

C.   <u>Statutory Claims</u>

Plaintiffs also allege that Defendants violated a number of federal statutory provisions, but Plaintiffs do not defend these allegations in response to Defendants' motion to dismiss. Moreover, Plaintiffs fail to state a claim under any of these statutory provisions on the facts alleged. For example, Plaintiffs fail to establish the existence of a private right of action for violations of 49 U.S.C. §§ 41702, 41310, and 40127.  *See* <u>Cort v.</u>

17

Ash, 95 S. Ct. 2080, 2088 (1975); 49 U.S.C. § 40113(a); Casas, 304 F.3d at 521-22; Williams v. Midwest Express Airlines, Inc., 315 F. Supp. 2d 975, 979 (E.D. Wis. 2004).[7] Although Plaintiffs also allege a violation of 42 U.S.C. § 2000d, they never identify their race, color, or national origin, and make no allegation that Defendants had received the requisite "Federal financial assistance." *Cf.* Alasady v. Northwest Airlines Corp., No. Civ. 02-3669, 2003 WL 1565944, at *12 (D. Minn. Mar. 3, 2003).[8] Plaintiffs' § 1981 claim likewise fails, for it requires Plaintiffs to establish, *inter alia*, that they are members of a racial minority. *See* Morris v. Dillard Dep't Stores, Inc., 277 F.3d 743, 751 (5th Cir. 2001).[9] Furthermore, because this claim concerns the delay caused by removal of Plaintiffs from their scheduled flight, it is preempted by the Warsaw Convention. *See* King, 284 F.3d at

---

[7] Plaintiffs additionally allege that Defendants violated 49 U.S.C. § 1374, but this provision has been repealed by the ADA and replaced with § 41310. *See* Waters v. Port Auth. of N.Y. & N.J., 158 F. Supp. 2d 415, 430 (D.N.J. 2001).

[8] Plaintiffs further allege violations of 42 U.S.C. § 2000e et seq. These provisions deal only with *employment* discrimination, which is not at issue here. *See* Smith v. Amedisys, Inc., 298 F.3d 434, 442 (5th Cir. 2002).

[9] Notably, Plaintiffs admit that they were ultimately "re-routed to [their] destination country." Generally, "mere delay, even coupled with discourteous treatment, poor service, or racial animus, is insufficient to sustain a § 1981 claim." Bentley v. United Ref. Co. of Penn., 206 F. Supp. 2d 402, 406 (W.D.N.Y. 2002); *but cf.* Alasady, 2003 WL 1565944, at *11.

355, 360-62; Gibbs v. Am. Airlines, Inc., 191 F. Supp. 2d 144, 146-49 (D.D.C. 2002).

## IV.   Order

For the reasons set forth, it is

ORDERED that Defendants Northwest Airlines Inc.'s and KLM Royal Dutch Airlines's First Amended Rule 12(b)(6) Motions to Dismiss (Document No. 29 in C.A. No. 04-680 and Document No. 30 in C.A. No. 04-681) are GRANTED, and Plaintiffs Jean J. Elnajjar's and S. A. Jaoude's claims against Defendants are DISMISSED with prejudice.

The Clerk shall file this Memorandum and Order in each of the two captioned cases, notify all parties, and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 15th day of August, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE